IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Northwestern University and Dr. Fraser Stoddart, | ) ) ) |
| Plaintiffs, | ) ) Case No. 20-cv-5729 ) |
| v. | ) Judge Joan B. Gottschall ) |
| PanaceaNano, Inc., and Youssry Botros, | ) ) ) |
| Defendants. | ) ) |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Northwestern University ("Northwestern") and Dr. Fraser Stoddart ("Stoddart") allege in their complaint that they should be listed as co-inventors of five patents issued to defendant Dr. Youssry Botros ("Botros") and non-defendant Benjie Limketkai.[1] Plaintiffs bring claims under 35 U.S.C. § 256(a) to correct patent inventorship ("inventorship claims") and for unjust enrichment under state law. *See* Compl. 17–21, ECF No. 1. The patents in suit concern inventions in a field of chemistry known as cyclodextrin metal-organic frameworks ("CD-MOFs"). *See* Compl. ¶ 6. All of the patents in suit have been assigned to Botros's co-defendant, PanaceaNano, Inc. ("PanaceaNano"). Compl. ¶ 2. Defendants move to dismiss the complaint for lack of personal jurisdiction and for failure to state a claim. ECF No. 17. For the reasons that follow, the court denies the motion.

---

1. The patents in suit are U.S. Patent No. 9,808,788 ("the '788 patent"); U.S. Patent No. 9,834,803 ("the '803 patent"); U.S. Patent No. 9,816,049 ("the '049 patent"); U.S. Patent No. 10,583,147 ("the '147 patent"); and U.S. Patent No. 10,736,967 ("the '967 patent") (collectively, "the Patents"). *See* Compl. Exs. A–E, ECF Nos. 1-1 through 1-5 (copies of patents in suit).

## I. Background

On a motion to dismiss for failure to state a claim, the complaint's factual allegations must be accepted as true, and reasonable inferences must be drawn in the plaintiffs' favor. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009.). A similar standard applies on a motion to dismiss for lack of personal jurisdiction. *See M-I Drilling Fluids UK Ltd. v. Dynamic Air Ltda.*, 890 F.3d 995, 999 (Fed. Cir. 2018); *see also Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 584 (7th Cir. 2021) (citing *Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010)). The court therefore accepts the following facts as true without vouching for the facts alleged in the complaint.

With its main campus in Evanston, Illinois, "Northwestern is a world-renowned research university that fosters and creates important progress in pure and applied science." Compl. ¶¶ 3, 10. Stoddart is a Northwestern chemistry professor. He runs a laboratory research group that the parties refer to as "the Stoddart group." Compl. ¶¶ 5–6. Stoddart has received distinguished recognition for his research, including co-winning the 2016 Nobel Prize for chemistry. *See* Compl. ¶ 5. Northwestern owns several patents naming Stoddart as the inventor, including several CD-MOF-related patents predating the patents in suit.[2] Compl. ¶ 8.

PanaceaNano is one of several startup companies formed as a result of Northwestern's efforts to bring Stoddart's research to market. *See* Compl. ¶ 7. Northwestern has licensed technology developed by the Stoddart group to PanaceaNano. *See* Compl. ¶¶ 7, 8. PanaceaNano is a Delaware corporation headquartered in California. Compl. ¶ 12; Botros Decl. ¶ 4, Nov. 3, 2020, ECF No. 18-1. Botros resides in California and serves as PanaceaNano's chief executive officer. Compl. ¶ 13; Botros Decl. ¶¶ 2, 5.

---

2. Northwestern explains in its complaint that its "Innovation and New Ventures Office ("INVO") facilitates translation of its scientists' research for the benefit of the public. . . . It does this through (among other things) successful commercialization with responsible industry partners." Compl. ¶ 4.

Botros began collaborating with Stoddart and the Stoddart group "at least as early as the 2009–10 timeframe." Compl. ¶ 21. As far as the court can tell from the highly technical descriptions in the complaint, the collaboration included the general subject matter of the patents in suit. *See* Compl. ¶ 27. During this time, "Botros was included as a co-author on a number of technical articles and publications along with members of the Stoddart group." *Id.* For example, Botros and Stoddart co-authored, with others, an article about the absorption of carbon dioxide by CD-MOFs in the 2010–11 timeframe. *See* Compl. ¶ 23 (citing article). Other subjects of co-authored articles included using "alpha-CDs" (the relationship between CD-MOFs and alpha-CDs is not presently clear to the court) to extract gold from raw materials and "Nanoporous Carbohydrate Metal-Organic Frameworks." *See* Compl. ¶ 26. Plaintiffs allege that Botros was aware of these co-authored publications and several other CD-MOF-related articles published by members of the Stoddart group in 2015–17. *See* Compl. ¶ 27; *see also* ECF No. 23 Exs. 3–8, 11, 13 (collecting selected journal articles).[3]

In June 2015, Botros and Limketkai, a PanaceaNano employee, received in-person training at Northwestern's main campus "on the subject matter of CD-MOFs." Compl. ¶ 28. They filed the provisional application for the first of the patents in suit about a month later. *See* Compl. ¶ 29. The applications for the other four patents were filed over the ensuing eight months, specifically on August 31, 2015; November 17, 2015; January 5, 2016; and March 24, 2016. Compl. ¶¶ 33, 36, 41, 45. According to plaintiffs, "the claims of the Patents [in suit] include inventive contributions by Stoddart made while the Stoddart group was working in collaboration with Botros, which contributions were not well-known or considered within the state of the art at the time the inventions were made." Compl. ¶ 49; *see also* Compl. ¶¶ 29–48.

---

3 The court finds the use of the word "aware" in this context peculiar, to say the least.

## II.  Personal Jurisdiction

Federal Circuit law governs defendants' personal jurisdiction attack "because the jurisdictional issue is 'intimately involved with the substance of the patent laws.' " *Trimble Inc. v. PerDiemCo LLC*, 997 F.3d 1147, 1152 (Fed. Cir. 2021) (quoting *Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*, 566 F.3d 1012, 1016 (Fed. Cir. 2009)).  The court asks two questions to assess personal jurisdiction: (1) whether the forum state's long-arm statute permits service of process; and (2) whether exercising personal jurisdiction violates due process.  *Genetic Implant Sys., Inc. v. Core-Vent Corp.*, 123 F.3d 1455, 1458 (Fed. Cir. 1997) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471–76 (1985)).  Illinois's long-arm statute stretches as far as the Due Process Clauses of the Illinois and federal constitutions permit.  *See* 735 Ill. Comp. Stat. § 5/2–209(c) ("A court may also exercise jurisdiction on any other basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States"); *Kipp v. Ski Enter. Corp. of Wis., Inc.*, 783 F.3d 695, 697 (7th Cir. 2015); *Mobile Anesthesiologists Chi., LLC v. Anesthesia Assocs. of Hous. Metroplex, P.A.*, 623 F.3d 440, 443 (7th Cir. 2010).  Thus, the personal jurisdiction question here boils down to a due process inquiry.  *See, e.g.*, *J.S.T. Corp. v. Foxconn Interconnect Tech. Ltd.*, 965 F.3d 571, 575 (7th Cir. 2020).

The federal Due Process Clause authorizes courts to exercise personal jurisdiction over out-of-state defendants who have "certain minimum contacts with [the state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).  A defendant's contacts with the forum state must be such that it could "reasonably anticipate being haled into court there." *Burger King*, 471 U.S. at 474 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).  The defendant's contacts with the forum can create either general or specific personal jurisdiction.  *M-I Drilling, supra*, 890 F.3d

at 1000 (citing *Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com. de Equip. Medico*, 563 F.3d 1285, 1297 (Fed. Cir. 2009)). The plaintiffs here do not argue that that this court has general jurisdiction, so the issue need not be analyzed further.[4] *See id.*; Resp. 8–12, ECF No. 20.

"In contrast to general, all-purpose jurisdiction, specific jurisdiction is confined to adjudication of 'issues deriving from, or connected with, the very controversy that establishes jurisdiction.' " *Goodyear Dunlop Tires Operations, S.A. v. Brown ex rel. Brown*, 564 U.S. 915, 919 (2011) (citation omitted). To determine whether specific personal jurisdiction exists, the court looks to whether: "(1) the defendant purposefully directed its activities at residents of the forum; (2) the claim arises out of or relates to the defendant's activities with the forum; and (3) assertion of personal jurisdiction is reasonable and fair." *M-I Drilling*, 890 F.3d at 1000 (citing *Synthes*, 563 F.3d at 1297). Plaintiffs bear the burden on the first two elements, but once they have been established, "the burden then shifts to the defendant to 'present a compelling case that the presence of some other considerations would render jurisdiction unreasonable.' " *Id.* (quoting *Rudzewicz*, 471 U.S. at 477).

Defendants focus on the first and second components of the specific jurisdiction inquiry. Defendants argue that Botros's visits to Illinois and his other contacts with Illinois were "wholly unrelated to the patents in suit." Mem. Supp. of Mot. to Dismiss ("Defs.' Mem.") 6–7, ECF No. 18. Defendants rely primarily on Botros's declaration. ECF No. 18-1. He avers that he "coordinated and managed the majority of" Stoddart's funding through his position with King

---

4. General jurisdiction attaches where a defendant's contacts with the forum state are "continuous and systematic," even when a plaintiff's claims do not arise out of those contacts. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415 (1984). "[A] court may assert jurisdiction over a foreign corporation 'to hear any and all claims against [it]' only when the corporation's affiliations with the State in which suit is brought are so constant and pervasive 'as to render [it] essentially at home in the forum State.'" *Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014) (quoting *Goodyear Dunlop*, 564 U.S. at 919). The "paradigm" for the exercise of general jurisdiction is a corporation's "place of incorporation and principal place of business." *Id.* at 137.

Abdul-Aziz City for Science and Technology ("KACST"). *Id*. "I visited Northwestern University no more than five times between 2013 and 2019, and each and every one of these visits to Illinois was related to the KACST funding of Stoddart and briefings of the KACST projects." *Id*. The declaration describes Botros and Limketkai's June 2015 visit to Northwestern's campus as follows:

> 9. Due to the policies of Northwestern University as conveyed to me, I never discussed with Stoddart any proprietary, confidential or novel information related to the Patents-in-Suit. Those policies included, [sic] the conflict of interest policies and the management plans put in place to specifically restrict faculty from their involvement with any intellectual property of any start-up companies.
>
> 10. I visited Illinois in June of 2015 with Limketkai. During that trip, Stoddart did not speak with either myself or Limketkai about any existing research or any future intellectual property. The purpose of that trip was to make the introduction of the new employee (at that time) Limketkai to Stoddart and his group at Northwestern University. During this visit, we met Stoddart [sic] less than 2 hours, and the discussions were entirely social in nature.

Botros Decl. ¶¶ 9–10.

Plaintiffs counter with evidence they contend shows that defendants' collaboration with Northwestern in Illinois was related to technical subjects covered by the patents in suit. They rely on Stoddart's declaration and several exhibits. ECF Nos. 21, 21-1, 23-1, 23-2. Among the exhibits is an email exchange setting an agenda for Botros and Limketkai's June 2015 visit to Northwestern. One of the email messages sets a detailed agenda for two and a half days of topics to be covered. Seen favorably to plaintiffs, the numerous technical topics covered include several facially related to CD-MOFs and the patents in suit, though it is not clear whether Botros, Limketkai, or both participated in which sessions. *See* Stoddart Decl. Ex. 2, ECF No. 21-1 at PageID Nos. 295-96 (email from Limketkai dated June 21, 2015). The record also contains a July 2019 email from Botros with proposed text to be included in PanaceaNano's application for an award given to innovative organizations and small businesses in the Chicago area. Stoddart

6

Decl. Ex. 1, ECF No. 21-1 at PageID Nos. 291–92. In a message dated July 30, 2019, Botros described PanaceaNano's connections to Chicago in detail; the list consists of nine bullet points. *See id.* For example, Botros wrote, "PanaceaNano founders and employees **collaborate heavily with Northwestern University faculty, students, Post docs, staff and other members**;" "PanaceaNano and NU [short for Northwestern] published **at least 69 papers** and articles with NU personnel;" and "PanaceaNano **shares Technology, Knowledge, Manufacturing Methods,** (and receives knowledge) with students, Post docs, and personnel from the Chicago area." *Id.* at PageID No. 292. PanaceaNano won the award. ECF No. 23-1 Ex. 2 at PageID No. 312–14 (Business Wire story dated Oct. 29, 2019).

As the foregoing discussion shows, defendants dispute the purpose of the collaboration and communications between the parties from 2008–19, but defendants do not appear to dispute, and the complaint adequately alleges, that the communications were frequent and the collaboration involved plaintiffs' joint research and training on technical matters facially related to the claims of the patents in suit. *See* Compl. ¶¶ 15–40. The disputed factual questions must be resolved in plaintiffs' favor at this early procedural stage of the case. On a motion to dismiss a complaint for lack of personal jurisdiction, the court "must accept the uncontroverted allegations in the plaintiff's complaint as true and resolve any factual conflicts in the affidavits in the plaintiff's favor." *M-I Drilling, supra*, 890 F.3d 995, 999 (Fed. Cir. 2018) (quoting *Elecs. for Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1349 (Fed. Cir. 2003)). "[I]n the absence of an evidentiary hearing, a plaintiff need only to make a *prima facie* showing that defendants are subject to personal jurisdiction." *Coyle*, 340 F.3d at 1349 (citing *Deprenyl Animal Health, Inc. v. Univ. of Toronto Innovations Found.*, 297 F.3d 1343, 1347 (Fed. Cir. 2002)) (other citation omitted).

Resolving disputed facts for plaintiffs, defendants' contacts with Illinois include approximately five years of research-related communications and collaboration between PanaceaNano personnel in California and Stoddart group members in Illinois, as well as the June 2015 trip during which Botros and Limketkai received training on topics facially related to the patents in suit. The question remains whether those Illinois contacts are sufficient to create specific personal jurisdiction over this inventorship dispute.

The parties cite no case applying personal jurisdiction principles in an inventorship case. Defendants rely on (Reply 2–3, ECF No. 25) *Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355 (Fed. Cir. 1998), a patent infringement case finding no specific personal jurisdiction based on a patent owner sending demand letters to the defendant in the forum state, Minnesota. *See* 148 F.3d at 1360. The record also showed that the plaintiff's patent licensees had extensive contacts with Minnesota, but the *Red Wing* court found those contacts insufficient for specific personal jurisdiction because "doing business with a company that does business in Minnesota is not the same as doing business in Minnesota." *Id.* at 1361. Defendants contend that plaintiffs are violating this principle by attempting to assert personal jurisdiction because Botros and PanaceaNano did business with Northwestern. Reply 3–4.

In *Trimble Inc. v. PerDiemCo LLC*, 997 F.3d 1147, 1155–57 (Fed. Cir. 2021), the Federal Circuit recognized that subsequent Supreme Court cases have abrogated *Red Wing*. This court directed the parties to submit supplemental briefing on *Trimble*. *See* ECF Nos. 28, 30. The *Trimble* decision clarifies that Botros's visits to Illinois and defendants' email communications directed to Illinois residents are relevant and capable of creating the requisite minimum contacts. *See Trimble*, 997 F.3d at 1155–56 ("communications from outside the forum can form the basis

of personal jurisdiction. . . . [A] broad set of a defendant's contacts with a forum are relevant to the minimum contacts analysis" (citations omitted)).

Ultimately, however, defendants' argument breaks down with their efforts to analogize plaintiff's inventorship claims to patent infringement claims. Plaintiffs' inventorship claims share the same basic premise of their unjust enrichment claim. With modest inferences from the complaint favorable to plaintiffs, the controversy here derives directly from defendants' extensive collaboration with the Stoddart group, particularly the June 2015 trip. The crux of plaintiffs' allegations is that defendants purloined proprietary information during those contacts with Illinois residents and used the ill-gotten proprietary information to apply for the patents in suit without naming plaintiffs as co-inventors. *See* Compl. ¶¶ 14–20. The better analogy is therefore to a claim for theft of a trade secret.

The Federal Circuit's analysis of a trade secrets claim in *Electronics for Imaging, Inc. v. Coyle*, 340 F.3d 1344 (Fed. Cir. 2003), is therefore instructive:

> We also conclude that the district court's exercise of jurisdiction over defendants as to EFI's non-misappropriation of trade secrets claim would comport with due process. First, defendants purposefully availed themselves of the privilege of conducting activities in California, thereby invoking the benefits and protections of the laws of California. As related above, defendants allegedly solicited EFI in California repeatedly—including phone calls and other communications directed to EFI in California, as well as a visit to EFI—to buy defendants' technology. Second, but for these contacts, EFI would not have filed an action seeking a declaration of non-misappropriation of trade secrets. EFI's claim, and any facts necessary to proving or disproving it, would necessarily coalesce out of the information disclosed during defendants' communications to California.

*Id.* at 1354; *see also Silent Drive, Inc. v. Strong Indus., Inc.*, 326 F.3d 1194, 1203–05 (Fed. Cir. 2003).

As in *Coyle*, but for defendants' purposeful contacts with Illinois, including the June 2015 trip, plaintiffs would not have filed this suit to correct inventorship. And any facts necessary for proving or disproving plaintiffs' inventorship claims will coalesce from the

9

contents of defendants' communications with Illinois residents. The court therefore concludes that Northwestern and Stoddart have made out a *prima facie* case of specific personal jurisdiction.[5]

### III. Failure to State a Claim

Plaintiffs' inventorship claims arise under 35 U.S.C. § 256(a) which provides, "Whenever through error a person is named in an issued patent as the inventor, or through error an inventor is not named in an issued patent, the Director may, on application of all the parties and assignees, with proof of the facts and such other requirements as may be imposed, issue a certificate correcting such error." This statute "provides a cause of action to interested parties to have the inventorship of a patent changed to reflect the true inventors of the subject matter claimed in the patent." *Larson v. Correct Craft, Inc.*, 569 F.3d 1319, 1324 (Fed. Cir. 2009) (quoting *Fina Oil & Chem. Co. v. Ewen*, 123 F.3d 1466, 1471 (Fed. Cir. 1997)).

To show the complaint is insufficient, defendants cite several cases applying the clear and convincing evidence standard at trial or summary judgment. *See, e.g.*, *Pannu v. Iolab Corp.*, 155 F.3d 1344 (Fed. Cir. 1998) (reversing order entering judgment as a matter of law for the defendant).

---

5. For the first time in their reply, defendants argue that it would be unreasonably unfair to require them to litigate this case in Illinois due to the outbreak of the COVID-19 pandemic. When defendants filed their reply, pandemic conditions were considerably different. Vaccines had not yet been approved, for instance. Particularly given the many changed circumstances, the court finds this argument to be waived and does not reach it. *See, e.g.*, *Novosteel SA v. United States,* 284 F.3d 1261, 1274 (Fed. Cir. 2002) ("reply briefs *reply* to arguments made in the response brief—they do not provide the moving party with a new opportunity to present yet another issue for the court's consideration. Further, the non-moving party ordinarily has no right to respond to the reply brief . . ."); *Wonsey v. City of Chi.*, 940 F.3d 394, 398 (7th Cir. 2019) ("This is a highly problematic strategy by Wonsey's counsel given that arguments raised for the first time in a reply brief are waived." (citing *United States v. Vitrano*, 747 F.3d 922, 925 (7th Cir. 2014) (other citation omitted)).

This court rejects defendants' argument that plaintiffs have failed to plead clear and convincing evidence, such as detailed drawings or books, sufficient to corroborate their inventorship claims at the motion to dismiss stage. Defendants cite no case imposing such a pleading burden, and the court has found none. *See* Defs.' Mem. 11. It is true that an inventorship claim must be proven by "clear and convincing evidence." *Shum v. Intel Corp.*, 633 F.3d 1067, 1083 (Fed. Cir. 2010) (quoting *Eli Lilly & Co. v. Aradigm Corp.*, 376 F.3d 1352, 1358 (Fed. Cir. 2004)). However, a Rule 12(b)(6) motion tests the complaint's sufficiency under the federal pleading standards applicable to a complaint filed before any discovery has been taken. *See TrinCo Inv. Co. v. United States*, 722 F.3d 1375, 1380 (Fed. Cir. 2013); *K-Tech Telecomm'ns, Inc. v. Time Warner Cable, Inc.*, 714 F.3d 1277, 1282–83 (Fed. Cir. 2013). Rule 8(a)(2) requires a complaint to contain a "short and plain statement showing that the pleader is entitled to relief." To meet this standard, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). In assessing the complaint's sufficiency, the court accepts all well-pleaded facts in the complaint, but not legal conclusions, as true and draws reasonable inferences in the plaintiff's favor. *Id.* (citing *Twombly*, 550 U.S. at 555).

To analyze plaintiffs' inventorship claims, this court applies the federal pleading standard as in *CODA Development S.R.O. v. Goodyear Tire & Rubber Co.*, 916 F.3d 1350 (Fed. Cir. 2019). The Federal Circuit did not require the complaint, as defendants would have it, to match

11

each claim in the patents in suit to a novel contribution from the plaintiff. Rather, the Federal Circuit applied the plausibility standard and set out the governing substantive law as follows:

> "Conception is the touchstone of inventorship." *Acromed Corp. v. Sofamor Danek Grp., Inc.*, 253 F.3d 1371, 1379 (Fed. Cir. 2001) (quoting *Burroughs Wellcome Co. v. Barr Labs.*, Inc., 40 F.3d 1223, 1227 (Fed. Cir. 1994)); *accord Fina Oil*, 123 F.3d at 1473. As to joint inventorship, a joint inventor must contribute to the invention's conception. *E.g.*, *Eli Lilly & Co. v. Aradigm Corp.*, 376 F.3d 1352, 1358–59 (Fed. Cir. 2004); *Ethicon, Inc. v. U.S. Surgical Corp.*, 135 F.3d 1456, 1460–61 (Fed. Cir. 1998); *Fina Oil*, 123 F.3d at 1473 ("[T]o be a joint inventor, an individual must make a contribution to the conception of the claimed invention that is not insignificant in quality, when that contribution is measured against the dimension of the full invention."). He or she need not "make the same type or amount of contribution" to the invention nor contribute to every claim—a contribution to one claim is enough. *Ethicon*, 135 F.3d at 1460 (quoting 35 U.S.C. § 116).
>
> Further, with regard to joint inventorship, there must be "some quantum of collaboration." *Kimberly-Clark Corp. v. Procter & Gamble Distrib. Co.*, 973 F.2d 911, 917 (Fed. Cir. 1992) ("[T]here must be some element of joint behavior, such as collaboration or working under common direction, one inventor seeing a relevant report and building upon it or hearing another's suggestion at a meeting."); *see Eli Lilly*, 376 F.3d at 1359 (referring to the inventors having "some open line of communication during or in temporal proximity to their inventive efforts").

*CODA Dev.*, 916 F.3d at 1358–59; *see also Ethicon, Inc. v. U.S. Surgical Corp.,* 135 F.3d 1456, 1460 (Fed. Cir. 1998).

Defendants assert the complaint here fails the plausibility test because it does not identify a specific novel contribution made by Stoddart to the patents in suit. Defs.' Mem. 9–10. Paragraph 32 is typical of the paragraphs defendants cite:

> Over the past decade, including prior to the filing of the '407 provisional [application], Stoddart and the Stoddart group, at least partially in collaboration with Botros, performed substantial work relating to $CO_2$ absorption and release using CD-MOFs. Their collaboration with Botros is corroborated by, *inter alia*, the publication of at least one paper that included Botros as a co-author.

Compl. ¶ 32; *see also* Compl. ¶¶ 35, 40, 44, 48. This paragraph, and the analogous paragraph beneath each inventorship count, plausibly alleges collaboration. True, the quoted paragraph asserts that Stoddart made a novel contribution in conclusory fashion. Standing alone, these

12

paragraphs do not satisfy the federal pleading standard for a novel contribution because "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' " *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

The paragraph quoted above does not stand alone, however. Elsewhere in the complaint, plaintiffs plead a novel contribution by plausibly matching at least one journal article published by Stoddart to the subject matter of each patent in suit. *See, e.g.*, Compl. ¶ 24. Even if this matching is not perfect, as defendants argue in reply, plaintiffs receive the benefit of the doubt in the form of favorable inferences that the articles evince a novel contribution. Furthermore, the complaint alleges that defendants received training at the Stoddart group on CD-MOF subjects related to the claims of the patents in suit, and defendants applied for the first of the patents approximately one month after the training. *See* Compl. ¶¶ 28–29.

Plaintiffs' well-pleaded allegations of training and collaboration distinguish several cases cited by defendants. In the cited decisions, the plaintiffs relied on suspicious timing alone to show collaboration and a novel contribution. *See, e.g.*, *Pro Mktg. Sales, Inc. v. Securion Sys., Inc.*, 2020 WL 5912351, at *5 (D. Utah Oct. 6, 2020) ("the only substantive, non-conclusory fact alleged is that Mr. Takahashi submitted patent applications that led to the Securion Patents in March and April 2013, which is around the same time CSI was working with Priva"); *CardiAQ Valve Techs., Inc. v. Neovasc, Inc.*, 57 F. Supp. 3d 118, 122–23 (D. Mass. 2014) (plaintiff failed to allege "any collaboration or joint efforts toward the development" of the patent in suit).

The complaint here has more in common with the complaint found to pass muster in *CODA Development*. The Federal Circuit held there that the specific facts alleged in the complaint stated an inventorship claim, including, *inter alia*, allegations that the defendant filed the disputed patent application within one month of meeting with plaintiffs to learn about

13

allegedly novel aspects of a technology made the subject of the accused patent. *See CODA Dev.*, 916 F.3d at 1359. Similarly here, the complaint's well-pleaded facts, viewed as a whole, "nudge" plaintiffs' correction of inventorship claims "across the line from conceivable to plausible." *Iqbal*, 556 U.S. at 680 (quoting *Twombly*, 550 U.S. at 570).

Defendants make a final argument in their reply. They invite the court to pierce the complaint's well-pleaded allegations of a novel contribution and examine the journal articles cited in the complaint in detail. They ask the court to compare the articles with the claims of the patents in suit in search of a novel contribution from Stoddart. *See* ECF No. 25 at 7–14. Defendants attach a chart setting forth their position on the construction of certain claims of the patents in suit and argue that plaintiffs have not identified a novel contribution from Stoddart to each claim under defendants' preferred construction. *See* ECF No. 25-1.

The chart highlights the prematurity of defendants' motion to dismiss. The Federal Circuit has held that "the legal scope of a claim must be known before the contributions of an alleged co-inventor can be compared to that claim to determine whether the correct inventors were named." *Eli Lilly*, 376 F.3d at 1360 (citing *Trovan, Ltd. v. Sokymat SA, Irori*, 299 F.3d 1292, 1302 (Fed. Cir. 2002)); *accord Egenera, Inc. v. Cisco Sys. Inc.*, 972 F.3d 1367, 1376 (Fed. Cir. 2020). Plaintiffs argue that they cannot identify Stoddart's novel contributions with greater specificity before claim construction. *See* Resp. 13–14. The court agrees. The patents in suit and journal articles cover a very technical area of chemistry with which the court is wholly unfamiliar. The court needs considerably more information before it can construe the claims and compare them to the journal articles plaintiffs cite. This sort of information ordinarily comes to light after the complaint stage and discovery in patent cases. Under this court's Local Patent Rules, claim construction ordinarily follows a period of discovery. *See* Local Patent Rule 1.3.

14

Following a claim construction ruling, this court will consider any proposal intended to expedite the case by requiring plaintiffs to identify evidence of novel contributions, but the court will not impose upon plaintiffs a burden to plead their position on claim construction in the complaint. Imposing such a burden lacks support in the rules governing federal pleading. *Cf. CODA Dev.*, 916 F.3d at 1359–60 (complaint plausibly alleged that plaintiff made novel contributions without identifying those contributions, based on suspicious timing, defendant's access to proprietary information made the subject of the disputed patents, and other case-specific facts suggesting co-inventorship).

### IV. Conclusion

For the reasons stated, defendants' motion to dismiss plaintiffs' complaint for lack of personal jurisdiction and for failure to state a claim is denied.

Dated: September 27, 2021

/s/
Joan B. Gottschall
United States District Judge